**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In Re: Heartland Payment Systems, Inc. Customer Data Security Breach Litigation | § § § § § § § § § § § § § § § § § § § § | MDL No. 09-2046 |
| This filing relates to: FINANCIAL INSTITUTION TRACK LITIGATION | | |
| LONE STAR NATIONAL BANK, N.A., *et al.*, | | |
| Plaintiffs, | | Civil Action No. H-10-171 |
| v. | | |
| HEARTLAND BANK and KEYBANK, N.A., | | |
| Defendants. | | |

**MEMORANDUM AND OPINION**

In January 2009, Heartland Payment Systems, Inc. ("Heartland") publicly disclosed that hackers had breached its computer systems and obtained access to confidential payment-card information for over one hundred million consumers. Consumers and financial institutions filed suits across the nation. The Judicial Panel on Multidistrict Litigation centralized those cases before this court. The cases have proceeded on two tracks, one for the Consumer Plaintiffs and one for the Financial Institution Plaintiffs.

There are two complaints on the financial-institution track. In the first complaint, nine issuer banks—which provide credit to consumers and issue payment cards[1]—filed a class-action lawsuit against Heartland, which specializes in processing payment-card transactions. That action has been dismissed, *see In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.* ("*Heartland II*"), — F. Supp. 2d —, 2011 WL 6012598 (S.D. Tex. 2011), with leave to amend. This memorandum and order addresses the second complaint, a class-action filed against Heartland Bank and KeyBank, N.A. by five of the issuer banks: Lone Star National Bank, N.A.; PBC Credit Union; O Bee Credit Union; Seaboard Federal Credit Union; and Pennsylvania State Employees Credit Union. (Docket Entry No. 1).

In this second complaint, the Financial Institution Plaintiffs asserted three causes of action against Heartland Bank and KeyBank, which are acquirer banks that contract with merchants to process their payment-card transactions. Acquirer banks frequently outsource the processing functions to companies specializing in that service, such as Heartland. The three causes of action are for breach of contract, breach of fiduciary duty, and negligence, based on Heartland Bank's and KeyBank's alleged failure to monitor Heartland's computer-system security. This court previously granted Heartland Bank's motion to dismiss for lack of personal jurisdiction. It also granted KeyBank's motion to dismiss for failure to state a claim, allowing the Financial Institution Plaintiffs leave to amend the breach-of-contract and breach-of-fiduciary-duty claims. (Docket Entry No. 41). The Financial Institution Plaintiffs filed an amended complaint against KeyBank alone. (Docket Entry No. 44). The amended complaint reasserts all three causes of action—breach of contract,

---

[1]The term "payment cards" refer to both credit and debit cards distributed by issuer banks.

breach of fiduciary duty, and negligence—notwithstanding this court's previous order granting leave to amend only for the first two claims.

KeyBank has moved to dismiss the amended complaint for failure to state a claim. (Docket Entry No. 47). The Financial Institution Plaintiffs have responded and KeyBank has replied. (Docket Entry Nos. 48–49). KeyBank has supplemented its response with a recent Ohio Supreme Court opinion, *Huff v. FirstEnergy Corp.*, 957 N.E.2d 3 (2011). (Docket Entry No. 50).

Based on the motion, response, and reply; the supplemental authority; the record; and the relevant law, this court grants KeyBank's motion to dismiss. Because the Financial Institution Plaintiffs amended without curing the pleading deficiencies, leave to amend again is denied as futile and the case is dismissed with prejudice.

The reasons for these rulings are explained below.

**I.      Background**

The background of this case is detailed in *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.* ("*Heartland I*"), MDL No. 2046, 2011 WL 1232352 (S.D. Tex. Mar. 31, 2011), and *Heartland II*, 2011 WL 6012598. *Heartland I* is the first case in this action; *Heartland II* is the Financial Institution Plaintiffs' case against Heartland. Only a brief summary focused on KeyBank is needed here.

KeyBank contracted with Heartland to process Visa and MasterCard payment-card transactions sent by participating merchants. (Docket Entry No. 29). The Visa and MasterCard network regulations require adherence to those regulations, and KeyBank's contract with Heartland makes that clear. (*Id.*, ¶ 1.1(f)). The contract provides that "[i]n the event of any inconsistency between any provision of this Agreement and the by-laws and regulations of Visa and/or

MasterCard, the by-laws and regulations of Visa or MasterCard in each instance shall be afforded precedence and shall apply." (*Id.*, ¶ 1.1(i)). The contract contains confidentiality provisions for both KeyBank and Heartland. As to KeyBank, the contract states that it "will safeguard, and hold confidential from disclosure to unauthorized persons, all data relating to the Plan submitted to KeyBank pursuant to this Agreement to the same extent that KeyBank safeguards data relating to its own business[.]" (*Id.*, ¶ 4.3(a)). The contract requires KeyBank and Heartland to indemnify the other's affiliates. (*Id.*, ¶ 4.5).

The Financial Institution Plaintiffs allege that KeyBank breached its duties under the Heartland contract and that they are third-party beneficiaries to that contract. The Financial Institution Plaintiffs also allege that KeyBank breached its fiduciary duty as a member of the Visa and MasterCard networks, which they characterize as joint ventures; that KeyBank acted negligently by failing to ensure that Heartland complied with the Payment Card Industry Data Security Standards; and that KeyBank is vicariously liable for Heartland's negligence. As noted, leave to amend was granted only for the breach-of-contract and breach-of-fiduciary-duty claims, not for the negligence claims.

## II.    The Legal Standard

A complaint may be dismissed when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" to

withstand a Rule 12(b)(6) motion. *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Facial plausibility "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor is facial plausibility "akin to a 'probability requirement'"; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Facial plausibility requires "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

When a plaintiff's complaint fails to state a claim, a district court generally should provide the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). "Denial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel.*

*Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (emphasis added). A district court has broad discretion to dismiss a complaint without leave to amend "where the plaintiff has previously been granted leave to amend [to cure pleading deficiencies] and has subsequently failed to add the requisite particularity to its claims[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (affirming a district court's dismissal for failure to state a claim without leave to amend after the court "instructed [the plaintiffs] to plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate").

**III. Analysis**

    **A. The Negligence and Vicarious-Liability Claims**

As the Financial Institution Plaintiffs concede in their response, (*see* Docket Entry No. 48, at 12), this court did not grant them leave to replead their negligence claim against KeyBank (or the related vicarious-liability claim). The Financial Institution Plaintiffs explain that they nevertheless have "allege[d] negligence and vicarious liability claims directly against KeyBank in order to preserve their rights on appeal." (*Id.*) This is unnecessary. As the Second Circuit has explained:

> We will not require a party, in an amended complaint, to replead a dismissed claim in order to preserve the right to appeal the dismissal when the court has not granted leave to amend. Such a formalistic requirement serves no valid purpose. In this respect, we join most other circuits. *See Young v. City of Mt. Ranier*, 237 F.3d 567, 572 (4th Cir. 2001) (collecting cases); *see also* 3 Moore's Federal Practice, 3d ed. § 15.17[4] ("In this situation [where a claim has been dismissed without leave to amend] it would be pointless to require the plaintiff to replead the dismissed claim and plaintiff's counsel would be forced to bear the risk of sanctions to preserve the client's right to appeal.").

*P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96 (2d Cir. 2004) (internal footnote omitted).

The negligence and related vicarious-liability claims are the same as those previously dismissed, with prejudice. They are dismissed, with prejudice, and without leave to amend, for the reasons previously explained in detail.

### B. The Breach-of-Contract Claim

The basis for the Financial Institution Plaintiffs' breach-of-contract claim remains the same as in the earlier complaint. The Financial Institution Plaintiffs allege that the contract between KeyBank and Heartland required KeyBank to monitor Heartland's efforts to maintain security for the payment cards used by the Financial Institution Plaintiffs' members. The Financial Institution Plaintiffs argue that the data breach demonstrates KeyBank's failure adequately to monitor Heartland's security efforts and therefore KeyBank's breach of its contractual obligation to do so. The Financial Institution Plaintiffs allege that they are intended third-party beneficiaries to this contract.

The previous opinion explained in detail why the Financial Institution Plaintiffs' breach-of-contract claim failed as a matter of law. *See Heartland I*, 2011 WL 1232352, at *16–19. This court surveyed Ohio law, which the parties agree apply to KeyBank's contract, and noted that "[t]he Ohio Supreme Court has explicitly recognized that 'the circumstances surrounding the promise' are relevant to determining whether a third party was an intended beneficiary of a contract." *Id.* at *17 (quoting *Anderson v. Olmsted Util. Equip., Inc.*, 573 N.E.2d 626, 631 n.5 (Ohio 1988)). The opinion continued:

> Courts interpreting the *Restatement* have enforced explicit statements in a contract that no third-party rights are created. *See, e.g.*, *Maghie & Savage, Inc. v. P.J. Dick Inc.*, No. 08APP-487, 2009 WL 1263965, at *11 (Ohio App. May 5, 2009) (citing cases). Courts have followed this approach in litigation related to data breaches similar to the events giving rise to this suit. *TJX Cos.*, 564 F.3d at 499; *Pa. State*

> *Employees Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 324 (M.D. Pa. 2005); *Cumis Ins. Co. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36, 466–69 (Mass. 2009). In those cases, the contracts explicitly addressed third-party rights. Language included in the contracts stated that they were "for the benefit of, and may be enforced by, [the parties] and their respective successors and permitted transferees and assignees, and [] not for the benefit of, and may not be enforced by, any third party." *Cumis*, 918 N.E.2d at 43–44. KeyBank's contract contains no similar language limiting or precluding third-party rights.

*Id.* Noting that the Financial Institution Plaintiffs relied on the contract's confidentiality provision, the *Heartland I* opinion explained:

> The contract casts the confidentiality promises as mutual promises between KeyBank and Heartland Payment Systems. KeyBank is required to protect data it receives under the contract "to the same extent that KeyBank safeguards data relating to its own business." Even if the complaint alleged that KeyBank ordinarily monitors contractors' privacy practices to a greater extent than it monitored such practices at Heartland Payment Systems*, the complaint contains no allegation that KeyBank had received the credit card information allegedly breached.* The complaint alleges that KeyBank hired Heartland Payment Systems to solicit merchants and to process transactions. *The complaint does not allege that the credit card data that was improperly accessed had come into KeyBank's possession.*

*Id.* at *18 (emphasis added). And finally, the *Heartland I* opinion rejected the Financial Institution Plaintiffs' reliance on the indemnity provision of the contract, stating that "[t]he complaint alleges no facts suggesting that an affiliate relationship between Heartland Payment Systems and the Financial Institution Plaintiffs [exist]." *Id.* at *19.

In its amended complaint, the Financial Institution Plaintiffs have attempted to cure the pleading deficiency by alleging that KeyBank constructively received and possessed the payment-card data that was compromised in the Heartland data breach. The amended complaint alleges:

> Because Heartland is acting via Defendant's sponsorship and is serving as Defendant's agent and *de facto* Acquirer entity, when it

> comes into the possession of Confidential Payment Card Data, Defendant constructively receives and possesses all such information received and possessed by Heartland.

(Docket Entry No. 144, ¶ 122). The question is whether this new theory of constructive possession and receipt is sufficient to state a third-party-beneficiary claim for breach of contract.

KeyBank argues that *Huff*, an Ohio Supreme Court opinion published after this court released its memorandum and opinion, "modifies the rule in Ohio that the circumstances surrounding a contract, without any support in the language of the contract itself, can suffice to establish an intended third-party beneficiary." (Docket Entry No. 50, at 3). *Huff* involved a contract between an electric company and a contractor under which the latter serviced the electric company's easement. A tree fell near that easement, injuring Lisa Huff. Her family sued the electric company and the contractor (and others), arguing that Ms. Huff was a third-party beneficiary to their servicing contract. That contract provided that "[t]he Contractor shall plan and conduct the work to adequately safeguard all persons and property from injury[.]" 957 N.E.2d at 4. The Ohio Supreme Court held that the contract did not indicate an intent to benefit Ms. Huff. "[F]or an injured third party to qualify as an intended third-party beneficiary, the contract must indicate an intention to benefit that third party." *Id.* at 8. "Generally, the parties' intention to benefit a third party will be found in the language of the contract." *Id.* at 7. The court concluded that the provision the Huffs cited did not show an intent to benefit any person or entity besides the two signatories:

> When this statement is placed in context, however, it is clear that neither Ohio Edison [the electrical company] nor Asplundh [the contractor] intended to make the Huffs third-party beneficiaries under the contract. The contract was not entered into for the general benefit of the public walking on public roads. It was designed to support the electrical service offered by Ohio Edison. The contract states that it applies to work, consisting of "tree trimming, tree removal, or chemical methods, and disposal of trees and brush," completed by

9

> Asplundh on behalf of Ohio Edison.  The purpose of the contract, then, is to ensure that Ohio Edison's equipment and lines are kept free of interference from trees and vegetation.  The remainder of the contract sets forth how this work is to be carried out, such as the standards by which Asplundh is to perform its work, the limits on liability for the performance of the work, and the necessary qualifications for the Asplundh employees who were to perform the work.  The contract contains no language establishing an ongoing duty to the general public on behalf of either Ohio Edison or Asplundh.

*Id.* at 7.  The fact that the Huffs may have been "able to show that at some point in time, members of the public using the road near the power lines might receive incidental or indirect benefits from the agreement" was insufficient because the agreement failed to show any *intention* by the contracting parties to benefit them.  *Id.* at 8.

This court previously concluded that Ohio law did not support the proposition that the contract language alone "is relevant to determining whether a party is an intended third-party beneficiary."  *Heartland I*, 2011 WL 1232352, at *16.  Instead, Ohio law supported the proposition that courts could consider "the 'circumstances surrounding the promise'" in determining third-party-beneficiary status.  *Id.* at *17 (quoting *Anderson*, 573 N.E.2d at 631 n.5).  After *Huff*, however, Ohio law appears consistent with Missouri law, as described in *Heartland II*, *see* 2011 WL 6012598, at *5–6—under which courts determining third-party-beneficiary status should look to the contract language's purpose but not "surrounding circumstances."  This is supported by the concurring opinion in *Huff*, in which two Ohio Supreme Court justices agreed with the judgment but not the majority opinion's approach, which they viewed as erroneously narrowing Ohio contract law to "create[] a new requirement that the intention to benefit a third party must be indicated in the terms of the contract."  957 N.E. 2d at 9 (O'Donnell, J., concurring in judgment).  Under *Huff*, Ohio law does not allow a judge to look to "circumstances" surrounding the contract to determine third-party-

10

beneficiary status. Instead, a judge must consider the contract language and what it shows the contract's purpose to be.

In *Heartland II*, this court explained why the confidentiality provision in the contract between Heartland and Heartland Bank did not show an intent to benefit the Financial Institution Plaintiffs. "This exchange of promises does not state an intent to benefit anyone other than the contracting parties. There is no clearly expressed intent to convey any enforceable right to the Financial Institution Plaintiffs or to any class to which they belong." 2011 WL 6012598, at *6. The confidentiality provision of the contract between Heartland and KeyBank is essentially the same as that between Heartland and Heartland Bank. The promises exchanged between Heartland and KeyBank do not state an intent to benefit anyone other than the contracting parties. The confidentiality provision does not indicate an intent to convey an enforceable right to the Financial Institution Plaintiffs or to any class to which they belong.[2] *See Huff*, 957 N.E.2d at 7. The contract was not entered into for the general benefit of other issuer and acquirer banks, such as the Financial Institution Plaintiffs, that are part of the payment-card-transmission process. Instead, the contract is clearly intended to benefit only the contracting parties. KeyBank contracted for Heartland's services in processing its merchants' payment-card transactions, and Heartland contracted to be paid for processing those transactions. The Financial Institution Plaintiffs may indirectly benefit from the contract between KeyBank and Heartland, but that benefit is incidental. Because the contract

---

[2]In their response to KeyBank's motion to dismiss, the Financial Institution Plaintiffs focus only on the confidentiality provision, therefore appearing abandon reliance on the affiliate provision of the contract. (*See* Docket Entry No. 48, at 3–5). In any event, they have not amended their complaint to add "facts suggesting that an affiliate relationship between Heartland Payment Systems and the Financial Institution Plaintiffs" exists. *Heartland I*, 2011 WL 1232352, at *19. And, as explained in *Heartland II*, "The Financial Institution Plaintiffs are not 'affiliates' of [KeyBank] within the word's common meaning." 2011 WL 6012598, at *6. Reliance on the indemnity provision continues to fail as a matter of law.

does not indicate the intent to benefit any other party, let alone the Financial Institution Plaintiffs, they cannot qualify as intended third-party beneficiaries. *See id.* Their breach-of-contract claim fails as a matter of law.[3]

### C. Breach of Fiduciary Duty

The basis for the Financial Institution Plaintiffs' repleaded breach-of-fiduciary-duty claim remains the same as in the prior complaint. The Financial Institution Plaintiffs allege that they are joint venturers with KeyBank through their common membership in the Visa and MasterCard networks, that KeyBank owed a fiduciary duty to the Financial Institution Plaintiffs through the joint venture, and that KeyBank breached this duty by failing to monitor Heartland adequately. The opinion in *Heartland I* previously explained at length the reasons why this claim, as originally pleaded, failed as a matter of law. *See* 2011 WL 1232352, at *19–21. In particular, the opinion discussed why the Financial Institution Plaintiffs had not adequately pleaded a joint venture. Even assuming that they had adequately alleged that they agreed to share profits with KeyBank, they did not allege that their agreement also obligated them to share losses with KeyBank. To be joint venturers under either New York or New Jersey law, the Financial Institution Plaintiffs had to allege the sharing of profits and losses. *See id.*

---

[3] Even assuming that the contract stated such an intent, the claim fails for other reasons. First, the amended complaint, like the original complaint, fails to state any nonconclusory allegations explaining how "KeyBank ordinarily monitors contractors' privacy practices to a greater extent than it monitored such practices at Heartland Payment Systems[.]" *Heartland I*, 2011 WL 1232352, at *18. That is required to demonstrate that KeyBank breached the contract's confidentiality provision. (*See* Docket Entry No. 29, ¶ 4.3(a) ("'KeyBank will safeguard, and hold confidential from disclosure to unauthorized persons, all data relating to the Plan submitted to KeyBank pursuant to this Agreement *to the same extent that KeyBank safeguards data relating to its own business*[.]'" (emphasis added))). Second, the constructive-possession-and-reception theory is inapplicable. The cases cited by the Financial Institution Plaintiffs arise in far different contexts than this data-breach context. Even assuming the theory's applicability, the Financial Institution Plaintiffs' basis for the theory is that Heartland acts as KeyBank's agent for each transaction. As KeyBank correctly points out, the contract expressly disclaims any agency relationship between Heartland and KeyBank. (*See id.*, ¶ 1.1(k)).

With respect to sharing losses, the Financial Institution Plaintiffs have amended their complaint by adding the following paragraph:

> The members of the Visa and MasterCard Associations also share losses in the form as a result of jointly absorbing fraudulent transactions. When non-compliance with the Payment Card Industry Data Security Standard results in a compromised account, Visa's "Account Data Compromise Recovery" process sets forth how the members share the resulting losses. The process does not force the members who suffered the losses to incur the entire loss they suffered; nor does the process force the members responsible for the event to incur the entire loss they caused. Rather, the process ensures that the losses are shared among all the members—those suffering the loss as well as those causing the loss. *The process accomplishes this by Visa collecting an amount representing part of the loss from the responsible member, and giving partial reimbursement to the members who have incurred losses as a result of the event, resulting in all members sharing in the losses.* The MasterCard regulations provide for similar loss sharing procedures in the event of a data breach.

(Docket Entry No. 48, ¶ 127 (emphasis added)).

KeyBank argues that this additional paragraph does not cure the pleading deficiency. Instead, the paragraph alleges only that losses are shared between the issuer and acquirer banks involved in specific transactions that turn out to be fraudulent. The shared losses, unlike the shared profits, are not shared among all members of the Visa or MasterCard networks for all transactions. (*See* Docket Entry No. 47, at 12). The Financial Institution Plaintiffs appear to concede this fact, while contending that the amended complaint sufficiently alleges loss sharing for the purpose of pleading a joint venture. (*See* Docket Entry No. 48, at 9 ("That said, and even if the 'special allocation' concept is set aside, there clearly is loss sharing 'between the specific members connected to the specific transactions that are compromised.'" (quoting KeyBank's motion to dismiss))).

"[I]n order for an agreement to qualify as a joint venture, co-venturers must agree, either expressly or impliedly, to share liability for the possible obligations, debts, and losses *of the joint venture itself.*" *Cosy Goose Hellas v. Cosy Goose USA, Ltd.*, 581 F. Supp. 2d 606, 622 (S.D.N.Y. 2008) (citing *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 68 (2d Cir. 2003)) (emphasis added). The joint venture on which the Financial Institution Plaintiffs' breach-of-fiduciary-duty claim depends is the Visa and MasterCard networks. Although the Financial Institution Plaintiffs have adequately pleaded that those select issuers and acquirers connected with a particular transaction agreed to share losses connected with that transaction, they have not pleaded that issuers and acquirers that are part of the Visa and MasterCard networks—the alleged joint venture—have agreed to share such losses. Instead, what the Financial Institution Plaintiffs pleaded is that the issuers and acquirers agreed to share losses arising only from specific transactions in which they were involved that prove to be fraudulent. Nowhere do they allege that issuers and acquirers generally have agreed to share all losses suffered by the networks as a whole. Moreover, in their amended complaint, the Financial Institution Plaintiffs retain a paragraph from the original complaint stating that it is "the issuers who bear the risk of cardholders' nonpayment and the acquirer banks who bear the risk of charge-backs." *Heartland I*, 2011 WL 1232352, at *20; (*compare* Docket Entry No. 1, ¶¶ 34, 42; *with* Docket Entry No. 44, ¶¶ 34, 42). This paragraph alleges that the issuers and acquirers have not agreed to share losses but instead to bear their own losses (for issuers, the losses associated with nonpayment; for acquirers, the losses associated with charge-backs).

The Financial Institution Plaintiffs' amended complaint fails to plead that the Visa and MasterCard networks created a joint venture among the issuers and acquirers, which include the

Financial Institution Plaintiffs and KeyBank. The breach-of-fiduciary-duty claim again fails as a matter of law.[4]

## IV. Conclusion

KeyBank's motion to dismiss, (Docket Entry No. 47), is granted. Because the court previously gave leave to amend and the Financial Institution Plaintiffs failed to cure the previously identified pleading deficiencies, leave to amend is denied. *See Steury*, 625 F.3d at 270. This case is dismissed, with prejudice. Final judgment is entered by separate order.

SIGNED on March 14, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[4] The Financial Institution Plaintiffs also rely on the theory that the agreement to share losses for a particular transaction constitutes a "special allocation," which "does not negate the existence of the joint venture itself[.]" (Docket Entry No. 48, at 9). As KeyBank correctly responds, whether this agreement is classified as a "special allocation" has no bearing on whether a joint venture exists.